UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| AGTEGRA COOPERATIVE, <br><br> Plaintiff, <br><br> vs. <br><br> SACRAMENTO ENERGY RESOURCES, L.L.C., PICO PROPANE OPERATING, L.L.C., <br><br> Defendants. | 3:23-CV-03032-ECS <br><br><br> OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE, DENYING DEFENDANT'S MOTION TO DISMISS, AND GRANTING DEFENDANT'S MOTION TO TRANSFER |

This matter comes before the Court on Defendant Sacramento Energy Resources, LLC's ("Sacramento") Motion to Dismiss or, in the Alternative, to Transfer. Doc. 22. Plaintiff Agtegra Cooperative ("Agtegra") resists Sacramento's motion. Doc. 26. Defendant Pico Propane Operating, LLC ("Pico") filed a Declaration in Support of Sacramento's Motion to Dismiss. Doc. 27. Agtegra subsequently moved to strike material in Sacramento and Pico's briefs, affidavits, and declarations. Doc. 30. Because Agtegra has no basis to strike non-pleadings and because Sacramento and Pico's arguments and filings are proper, the Court denies Agtegra's Motion to Strike, Id. Further, because there is a valid and enforceable forum-selection clause, and transferring only Sacramento would create piecemeal litigation, this Court grants Sacramento's Motion to Transfer, Doc. 22. Thus, the Court transfers the entire case—including Agtegra's claims against Pico—to the Northern District of Texas, Fort Worth Division.

1

## I.  Background

On November 7, 2023, Agtegra filed a Complaint against Defendants Over XXI, Inc. ("Over XXI") and Sacramento in Lyman County in South Dakota's Sixth Judicial Circuit.  Doc. 1-1.  Nine days later, Agtegra amended its Complaint to add Defendant Pico.  Id. at 7–12.  Over XXI then removed this case based on diversity jurisdiction.  Doc. 1.  In its Amended Complaint, Agtegra claims that it contracted with Sacramento to fill the propane[1] tank on its property in Kennebec, South Dakota.  Id. at 9.  It also contends Sacramento subsequently hired Over XXI and Pico to deliver the propane.  Id.  Agtegra maintains that propane contaminated with water was unloaded into its gas system, resulting in extensive damage.  Id. at 8–9.  Accordingly, Agtegra sued Defendants alleging claims of negligence, breach of contract, and respondeat superior.  Id. at 9–11.  Agtegra eventually dismissed its claims against Over XXI.  Docs. 20, 21.

Sacramento subsequently filed a Motion to Dismiss or, in the Alternative, to Transfer. Doc. 22.  Sacramento moved to dismiss under the doctrine of forum non conveniens and Federal Rule of Civil Procedure 12(b)(6).  Id.  Alternatively, Sacramento moved under 28 U.S.C. § 1404(a) to transfer the case to the United States District Court for the Northern District of Texas, Fort Worth Division.  Id.  Sacramento contends that Agtegra signed a contract governing propane sales, which included a forum-selection clause.  Doc. 23 at 1.  Sacramento maintains the forum-selection clause is mandatory, valid, and enforceable against Agtegra.  Id. at 5–8.

Agtegra contends the forum-selection clause does not apply to this propane delivery because the propane was contaminated with water.  Doc. 26 at 7.  In the alternative, Agtegra argues the contract and forum-selection clause are ambiguous as to whether they apply to the

---

[1] Propane is "[a]lso known as liquefied petroleum gas (LPG)."  U.S. Dep't of Energy, Propane Fuel Basics, https://afdc.energy.gov/fuels/propane-basics (last visited October 3, 2024).

2

current dispute. Id. at 9. Agtegra also maintains Sacramento waived enforcement of the forum-selection clause through delay. Id. at 10. Agtegra further asserts the Court should not transfer Agtegra's claims against Sacramento because doing so would create piecemeal litigation.[2] Id. at 11. Finally, Agtegra contends that, if the forum-selection clause is valid, this Court should only transfer Agtegra's claims against Sacramento and retain its claims against Pico. Id. at 11–13.

A week after Agtegra's response, Pico filed a Declaration in Support of Sacramento's Motion to Dismiss. Doc. 27. Pico does "not object to either dismissal or transfer of the [case] (in its entirety including all claims against Pico) to Texas." Id. ¶ 3. Pico states it has pending litigation in Texas against companies that are at fault for the alleged contamination. Id. ¶¶ 8–11. Pico maintains that transferring Agtegra's claims against Sacramento to Texas while keeping Agtegra's claims against Pico in South Dakota would create piecemeal litigation. Id. ¶ 4. Thus, Pico claims transferring the entire case, including the claims against them, to Texas will "*increase* judicial efficiency and *reduce* piecemeal litigation." Id. ¶ 7.

Pico also rebuts Agtegra's claim that Sacramento waived enforcement of its forum-selection clause. Id. ¶ 12. Pico's counsel claims he was part of conversations where Sacramento informed Agtegra about its intent to move to dismiss based on the forum-selection clause. Id

Sacramento, replying to Agtegra, claimed the contract and forum-selection clause were valid, enforceable, and unambiguous. Doc. 28 at 2–6. It also asks the Court to impose sanctions

---

[2] "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Keating v. Univ. of S.D., 386 F. Supp. 2d 1096, 1103 (D.S.D. 2005) (quoting LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1560 (7th Cir. 1989)).

against Agtegra under 28 U.S.C. § 1927 for wasting the Court and counsel's time based "on a patently incorrect interpretation of the contract, the law, and the facts." Id. at 2 n.2. Additionally, Sacramento denies waiving enforcement of the forum-selection clause and attributes any delay to attempts to settle the case with Agtegra before such a motion was needed. Id. at 6–7. Sacramento contends Agtegra knew of Sacramento's intention to file the present motion if a settlement was not reached. Id.. It finally asserts that piecemeal litigation will result unless all parties litigate their claims in Texas. Id. at 10–12.

Agtegra then moved to strike settlement materials presented in connection with Sacramento's filings in support of its Motion to Dismiss, or in the Alternative, to Transfer. Docs. 30, 31. Agtegra also seeks to strike Sacramento's argument and Pico's Declaration relating to transferring the entire case—including Agtegra's claims against Pico—to Texas. Docs. 30, 31.

On August 23, 2024, this Court heard the parties' arguments on their pending motions.

## II.  Discussion

Because Agtegra seeks to strike material submitted in support of Sacramento's motion, this Court will first address Agtegra's Motion to Strike before determining Sacramento's Motion to Dismiss, or in the Alternative, to Transfer.

### A.  Agtegra's Motion to Strike

Agtegra moves to strike settlement materials submitted in connection with Sacramento's motion, arguments regarding transferring Pico in Sacramento's Reply Brief, and settlement communications in Sacramento's Reply Brief and Pico's Declaration. Doc. 30; Doc. 31 at 2–3.

Federal Rule of Civil Procedure 12(f) allows a "court [to] strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

Civ. P. 12(f). A court may act on its own motion or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Id. Under Rule 12(f), courts "enjoy liberal discretion to strike pleadings," but motions to strike are disfavored and infrequently granted. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). Thus, motions to strike "should be denied 'unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" Poulos v. Summit Hotel Props., LLC, No. CIV 09-4062, 2010 WL 2034634, at *3 (D.S.D. May 21, 2010) (quoting Alt. Recording Corp. v. Raleigh, No. 06-cv-1708, 2009 WL 1543458, at * 6 (E.D. Mo. June 2, 2009)).

### 1. Sacramento's Filings

Agtegra seeks to strike under Rule 12(f) portions of Sacramento's Reply Brief in Support of its Motion to Dismiss and its accompanying affidavit, Docs. 28, 29. Agtegra contends these filings include settlement negotiations prohibited by Federal Rule of Evidence 408 and arguments not initially raised in Sacramento's initial brief. Doc. 31 at 4–9. Sacramento counters that Rule 12(f) does not apply because it is only used to strike pleadings. Doc. 32 at 5. It also claims the Federal Rules of Evidence do not apply to its Motion to Dismiss, and even if the Federal Rules of Evidence do apply, the alleged communications are admissible because they fall outside the scope of Rule 408 and are being used to negate claims of delay—a valid exception under Rule 408(b). Id. at 9–10.

Contrary to Agtegra's claim that "Rule 12(f) applies to [its] request to strike both Sacramento's and Pico's" brief, affidavit, and declaration, Doc. 34 at 2, "[a] Rule 12(f) motion to strike may only be used on pleadings." Buergofol GmbH v. Omega Liner Co., No. 22-CV-

04112, 2024 WL 3521802, at *2 (D.S.D. July 24, 2024) (collecting cases); see also Charles Alan Wright & Arthur R. Miller, 5C Federal Practice and Procedure § 1380 (3d ed.), Westlaw (database updated August 2024) ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)."). The filings that Agtegra seeks to strike—Sacramento's brief and affidavit—are not pleadings under Rule 7(a). This reason alone is sufficient for this Court to deny Agtegra's Motion to Strike.

### a. Evidence of Settlement Negotiations under Rule 408

Even if this Court could strike non-pleadings, the Court would still deny Agtegra's motion based on Rule 408, assuming the Federal Rules of Evidence apply at this stage of the proceedings.[3] Sacramento introduced the settlement negotiations Agtegra now seeks to strike as a response to Agtegra's argument that Sacramento waived enforcement of the forum-selection clause by delay. See Doc. 26 at 10–11 (arguing Sacramento has no excuse for its delay in bringing a motion to enforce the forum-selection clause). Yet Agtegra itself stated this Court must consider Sacramento's conduct in determining whether it waived enforcement of the forum-selection clause. Id. at 10. In fairness then, it seems only appropriate to consider Sacramento's response on the cause of delay. See Doc. 28 at 6–10.

Rule 408 allows evidence of settlement negotiations if it is not "being offered to prove a party's liability or . . . the validity of [a] claim." Arnold v. LME, Inc., 650 F. Supp. 3d 772, 785 (D. Minn. 2023) (citing Weems v. Tyson Foods, Inc., 665 F.3d 958, 965 (8th Cir. 2011)). Rule 408(b)'s plain language expressly allows courts to admit settlement negotiations when they are

---

[3] See Fed. R. Evid. 1101(b),(d) ("These rules apply in: civil cases and proceedings," but do not apply to "miscellaneous proceedings").

being used to "negat[e] a contention of undue delay."  Assuming without deciding that these communications are settlement communications, the Court determines Sacramento's introduction of these communications was intended to negate Agtegra's contention that Sacramento delayed enforcing the forum-selection clause.  Accordingly, this Court still would deny Agtegra's Motion to Strike the alleged settlement negotiations because Rule 408 allows its admission.

### b.  Preventing Piecemeal Litigation

Agtegra claims this Court should disregard Sacramento's "new argument" on transferring Pico to avoid piecemeal litigation because Sacramento did not make the argument in its initial brief.  Doc. 31 at 8–9.  Agtegra's argument is unavailing.  Sacramento argued in its initial brief that granting its motion to dismiss or transfer would "prevent piecemeal litigation."  Doc. 23 at 9. Thus, Sacramento's Reply Brief did not make a "new argument," rather it supplemented an argument already raised.  See Doc. 28 at 11; Barham v. Reliance Standard Life Ins., 441 F.3d 581, 584 (8th Cir. 2006) (Although courts generally "will not consider arguments raised for the first time in a reply brief," courts may consider an argument that "supplements an argument raised in a party's initial brief." (citations omitted)).

Even if this were a new argument by Sacramento—which it is not—Agtegra raised the issue first, and Sacramento properly replied to it.  See Doc. 26 at 1–2, 6, 11–12 (arguing entire case should remain in South Dakota because Pico was not a party to the forum-selection clause and arguing in the alternative that the Court should only transfer Sacramento).  Agtegra cannot make an argument and then cry foul when Sacramento responds to it.  See Kahle v. Leonard, No. CIV. 04-5024, 2010 WL 597169, at *1 (D.S.D. Feb. 17, 2010) (When a party makes an argument "the other party has a right to raise its defense in a responsive brief.").  Therefore, even if

Sacramento's reply contained a "new argument," it is more appropriately viewed as a reply to an argument Agtegra raised first.  For the above reasons, Agtegra's Motion to Strike, Doc. 30, as it pertains to Sacramento, is denied.

### 2.  Pico's Declaration

Agtegra next argues that Pico's Declaration in Support of Sacramento's Motion to Dismiss, Doc. 27, should be struck because it is a brief submitted in violation of Local Rule 7.1(B).  Doc. 31 at 4.  Local Rule 7.1(B) ("Required Written Brief") provides:

> On or before 21 calendar days after service of a motion and brief, unless otherwise specifically ordered by the court, all *opposing parties* must serve and file a *responsive brief* containing opposing legal arguments and authorities in support thereof. The movant may file a *reply brief within 14 calendar days after service of the responsive brief.*

D.S.D Civ. LR 7.1(B) (emphasis added).

In response, Pico maintains the Local Rules do not prohibit its Declaration because it was not a "responsive brief" opposing Sacramento's motion.  Doc. 33 at 4.  Alternatively, even if its Declaration is considered a brief, Pico contends it is a timely "reply brief" responding to Agtegra—who argued that Pico should not be transferred or dismissed.  Id.  This Court agrees with Pico.

Pico did not oppose Sacramento's motion.  As a result, Pico did not have to file a responsive brief within 21 calendar days of Sacramento's motion.  Pico instead filed a declaration supporting Sacramento's motion, which is not subject to Local Rule 7.1(B).  And even if Pico's declaration is considered a brief, it is more appropriately considered a timely reply (filed within 14 calendar days of Agtegra's responsive brief) to arguments Agtegra made about Pico.  See Doc. 26 (Agtegra's response to Sacramento's motion to dismiss filed on April 8, 2024), Doc. 27 (Pico's Declaration in Support of Sacramento Energy's Motion to Dismiss filed on April 15, 2024); see also Kahle, 2010 WL 597169, at *1 (When a party makes an argument

8

"the other party has a right to raise its defense in a responsive brief."). In short, Pico's Declaration, Doc. 27, does not violate Local Rule 7.1(B). Agtegra's Motion to Strike, Doc. 30, is therefore denied as it pertains to Pico.

### B. Motion to Dismiss or, in the Alternative, to Transfer

Having decided this Court can consider all the documents Agtegra sought to strike, the Court now takes up Sacramento's Motion to Dismiss or, in the Alternative, to Transfer under the doctrine of forum non conveniens, Rule 12(b)(6), and 28 U.S.C. § 1404(a). Doc. 22. Sacramento claims it has a valid contract and mandatory forum-selection clause with Agtegra requiring that *any* action be taken in Parker or Tarrant County, Texas. Doc. 23. Because it is still unclear whether a Rule 12(b)(6) motion can enforce a forum-selection clause[4] and Sacramento also properly moved to dismiss under the doctrine of forum non conveniens,[5] the Court need only analyze Sacramento's motion under the doctrine of forum non conveniens and § 1404(a).

### 1. Choice of Law

This Court's jurisdiction is based on diversity of citizenship. Agtegra and Sacramento's contract states that it "shall be interpreted under Texas law." Doc. 12-1 at 3. Agtegra and Sacramento, however, only cite South Dakota contract interpretation cases. Doc. 26 at 6, 9–10; Doc. 28 at 3, 5. Here, the Court need not determine whether South Dakota or Texas interpretation principles apply here "because the outcome would be the same under either law."

---

[4] See In re Union Elec. Co., 787 F.3d 903, 907 (8th Cir. 2015) (acknowledging the United States Supreme Court in Atlantic Marine "declined to address the propriety of enforcing forum-selection clauses through motions to dismiss under Rule 12(b)(6)." (citing Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 61 (2013))).

[5] "The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad.'" Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430 (2007).

<u>Prudential Ins. of Am. v. Kamrath</u>, 475 F.3d 920, 924 (8th Cir. 2007) (citation omitted); <u>see also</u>

<u>Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Off.</u>, 5 F.4th 895, 897 n.2 (8th Cir. 2021)

("'[B]oth parties operate under the assumption that [Arkansas] law controls,' <u>Rainforest Café,</u>

<u>Inc. v. EklecCo, L.L.C.</u>, 340 F.3d 544, 546 (8th Cir. 2003), 'and neither party argues that the

application of one or another body of law would materially affect the outcome,' <u>Servewell</u>

<u>Plumbing, LLC v. Fed. Ins.</u>, 439 F.3d 786, 789 (8th Cir. 2006), so we will apply Arkansas law in

this case.").

     In Texas, "[t]he goal of contract interpretation is to ascertain the parties' true intent as

expressed by the plain language they used." <u>Great Am. Ins. v. Primo</u>, 512 S.W.3d 890, 893

(Tex. 2017) (citation omitted). Under Texas law, "[a] contract is ambiguous when it is

susceptible to more than one reasonable interpretation." <u>In re Int'l Profit Assocs., Inc.</u>, 274

S.W.3d 672, 677 (Tex. 2009) (citation omitted).

     In South Dakota, "court[s] looks to the language that the parties used in the contract to

determine their intention." <u>Detmers v. Costner</u>, 994 N.W.2d 445, 454 (cleaned up). Under

South Dakota law, "ambiguity exists if a contract is capable of more than one meaning when

viewed objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement." <u>Niemitalo v. Seidel</u>, 972 N.W.2d 115, 119–20 (cleaned up). Thus, the

Court's interpretive analysis is the same under South Dakota and Texas law.

     However, "[c]ourts recognize a distinction between the *enforceability* and *interpretation*

of a forum-selection clause." <u>Omega Liner Co. v. Monte Vista Grp., LLC</u>, No. CV 18-4105,

2019 WL 4415378, at *5 (D.S.D. Sept. 16, 2019) (collecting cases). The Eighth Circuit has "yet

to adopt a definitive position on the issue." <u>Servewell Plumbing</u>, 439 F.3d at 789. Courts have

generally treated enforcement of forum-selection clauses as procedural under the <u>Erie</u> doctrine

and "have thus applied federal law in diversity cases to questions of enforcement." <u>Omega Liner</u>

<u>Co.</u>, 2019 WL 4415378, at *5 (citing <u>Collins v. Mary Kay, Inc.</u>, 874 F.3d 176, 182 (3d Cir.

2017) (additional citations omitted)). Thus, the Court concludes that federal common law

governs the *enforceability* of the forum-selection clause at issue.

### 2.   Validity and Interpretation of Contract and Forum-Selection Clause

Agtegra claims Sacramento denied having a contract with Agtegra in its Answer. Doc.

26 at 7 (citing Doc. 12 ¶ 14). Agtegra also contends the contract it entered into with Sacramento,

Doc. 12-1, does not cover the delivery at issue as it was delivered 500 gallons of water—not

propane. Doc. 26 at 8. Finally, Agtegra asserts the contract, Doc. 12-1, is ambiguous as to

whether it governs this dispute. Doc. 26 at 9. It maintains discovery is needed to fully interpret

this provision. <u>Id.</u> at 10. Sacramento replied claiming the contract and forum-selection clause

plainly and unambiguously cover the delivery of the 7,000 gallons of propane, which was

unintentionally mixed with water. Doc. 28 at 2–6.

Sacramento and Agtegra signed an agreement (Titled "Sacramento Energy Resources,

LLC General Terms and Conditions Liquid Petroleum Gas"), Doc. 12-1, that governs "all written

or oral contracts and transactions" between them. <u>Id.</u> at 1. The agreement includes a

forum-selection clause, which reads as follows:

> In the event of *any dispute*, the matter shall be resolved *exclusively* by legal action
> filed and conducted in the applicable federal or state court located in Parker or
> Tarrant County Texas. Buyer and Seller each irrevocably consents to the *exclusive*
> jurisdiction and venue of such court. Each party shall bear its own cost and
> attorney's fees. This Agreement shall be interpreted under the laws of Texas. Buyer
> and Seller each irrevocably waives any right to trial by jury with respect to any
> legal proceeding arising out of any transaction entered into hereunder.

<u>Id.</u> at 3 (emphasis added).

Agtegra's claim that Sacramento denied having a contract with Agtegra in its Answer is unavailing.  See Doc. 1-1 ¶ 15; Doc. 12 ¶ 14.  Sacramento, in its Answer, contended that Agtegra's claims were "governed by a contract that requires 'any dispute' be 'resolved exclusively by legal action filed and conducted in the applicable federal or state court located in Parker or Tarrant County[,] Texas."  Doc. 12 ¶ 21 (citing Doc. 12-1).  Sacramento included the signed contract as an exhibit.  See Doc. 12-1.  Accordingly, the parties have a contract governing propane deliveries.  See Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 693, 695 (8th Cir. 1997) (deciding use of "any dispute or disputes arising between the parties hereunder" language in forum-selection clause covers both contract and tort claims relating to the contract).

Finally, contrary to Agtegra's contention, Sacramento's failure to give an invoice to Agtegra does not void the contract.  See Doc. 12-1.  In fact, given the damage to Agtegra's gas system by the contaminated gas delivery, it makes sense that Sacramento would not bill Agtegra. See Doc. 29-4 at 4 ("Due to the issues with delivery, Sacramento did not send Agtegra a bill for the propane. Instead, it sent the invoice to PICO/Meritum, who paid the bill.").  Because the parties' contract is valid and covers deliveries of propane and any disputes arising from them, the forum-selection clause governs the current dispute on the contaminated propane delivery.

### 3. Waiver

Agtegra next argues that Sacramento waived its right to enforce the clause through delay. Doc. 26 at 10–11.  It cites authority claiming that "parties may waive their right to invoke a [forum-selection] clause."  Uniq Branch Off. Mexico, S.A. de C.V. v. Steel Media Grp., No. 22-23876, 2023 WL 6294841, at *4 (S.D. Fla. Sept. 27, 2023) (citing Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009) (additional citations omitted)).  Steel Media Grp., also states that waiver does not occur when "Defendants have raised the forum-selection

clause early and often and have not participated in discovery without raising the issue." Id. at *5.

Sacramento has done just that. See Doc. 12 ¶ 21 (raising forum-selection clause in its Answer

and asserting that Agtegra's Complaint should be dismissed under Rule 12(b)(6) and the doctrine

of forum non conveniens); Doc. 16 ¶ 5 (Joint discovery report submitted by Agtegra that

included Sacramento's intention to raise jurisdiction and venue defenses "by way of motion

within the next 60 days."); Doc. 27 ¶ 12 (Pico's counsel rebutting Agtegra's claim that

Sacramento waived enforcement of the forum-selection clause because it had "been a part of

various email and phone conversations . . . where counsel for Sacramento . . . informed

Agtegra's counsel since the beginning that it was planning to file a Motion to Dismiss."); Doc.

28 at 6–10 (Sacramento's Reply Brief negating contention of undue delay by showing its

communications to Agtegra informing them that it would enforce the forum-selection clause if

the case could not be settled); Doc. 29 ¶ 14 ("[N]o party has served any written discovery on any

party. No depositions have been taken, and no party has even requested to take the deposition of

any individual or entity.").

More importantly, the Eighth Circuit has permitted district courts to consider a motion to

transfer based on a forum-selection clause when the case has "not substantially progressed

beyond arguments over the correct forum." In re Union Elec. Co., 787 F.3d 903, 909 (8th Cir.

2015); see also Charles Alan Wright & Arthur R. Miller, 14D Federal Practice and Procedure

§ 3803.1 (4th ed.), Westlaw (database updated June 2024) ("Rule 12(b)(6) and Section 1404(a)

[motions] are not subject to . . . strict waiver requirements."). Sacramento moved to dismiss

under the doctrine of forum non conveniens and Rule 12(b)(6) or, in the alternative, to transfer

under § 1404(a) only four months after Agtegra filed its Complaint. Doc. 22. Accordingly, the

case has "not substantially progressed beyond arguments over the correct forum." In re Union

Elec. Co., 787 F.3d at 909.  Because Sacramento remained diligent in communicating to Agtegra its intent to enforce the forum-selection clause, Sacramento did not waive enforcement of the forum-selection clause.

### 4.  Forum Non Conveniens and 28 U.S.C. § 1404(a)

Agtegra claims the Court should not transfer its claims even if it finds the forum-selection clause is enforceable because doing so would cause piecemeal litigation.  Doc. 26 at 11–12. Agtegra argues in the alternative that, if the Court decides to transfer, it should only transfer Agtegra's claims against Sacramento.  Id. at 13.  Pico and Sacramento assert Agtegra caused piecemeal litigation by suing in South Dakota despite Agtegra and Sacramento's forum-selection clause requiring all disputes to be resolved in Texas.  Docs. 27, 28.  Accordingly, Sacramento and Pico claim that dismissing or transferring the *entire* case to the Northern District of Texas, Fort Worth Division, would increase judicial efficiency and reduce piecemeal litigation since Pico already has pending litigation on this matter in Texas.  Docs. 27, 28.

Pursuant to statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  Terra Int'l, 119 F.3d at 695.  The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision."  In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (quoting Terra Int'l, 119 F.3d at 691).  Courts though generally consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice.  28 U.S.C. § 1404(a).

14

Ultimately, a motion to dismiss under the doctrine of forum non conveniens and a motion transfer under § 1404(a) are both evaluated under "the same balancing-of-interests standard" except a motion to transfer under § 1404(a) does not require dismissal of the suit. <u>Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.</u>, 571 U.S. 49, 60–61 (2013). A valid forum-selection clause, however, changes this analysis. <u>In re Union Elec. Co.</u>, 787 F.3d at 906 (citing <u>Atl. Marine</u>, 571 U.S. at 62–67). "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." <u>Atl. Marine</u>, 571 U.S. at 63. Second, a district court is to consider only public-interest factors, not the parties' private interests. <u>Id.</u> at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." <u>Id.</u> Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." <u>Id.</u>

Because Pico filed a Declaration in Support of Sacramento's Motion to Dismiss, Doc. 27, and is not a party to the forum-selection clause, the Court must separately analyze the Motion to Dismiss, or in the Alternative, to Transfer, Doc. 22, and the factors as they pertain to Sacramento and Pico.

### a.  Sacramento

Parties seeking to enforce a forum-selection clause must do so using either the doctrine of forum non conveniens or § 1404(a). <u>Atl. Marine</u>, 571 U.S. at 59–60. "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." <u>M.B. Rest., Inc. v. CKE Rest., Inc.</u>, 183 F.3d 750, 752

(8th Cir. 1999) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)). "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Bremen, 407 U.S. at 15. "[B]ecause the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" Atl. Marine, 571 U.S. at 63 (first alteration added) ( quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 33 (1988)). Inconvenience to a party cannot invalidate a forum-selection clause, but "a party [may] avoid enforcement of the clause" if it would, in essence, deprive a litigant of their day in court. Union Elec. Co. v. Energy Ins. Mut. Ltd., 689 F.3d 968, 974 (8th Cir. 2012) (citing Dominium Austin Partners, LLC v. Emerson, 248 F.3d 720, 727 (8th Cir. 2001)).

Here, there is a valid forum-selection clause executed by two sophisticated parties in an arm's-length transaction. See Doc. 12-1. Accordingly, Agtegra "bears an especially 'heavy burden of proof' to avoid its bargain." Servewell Plumbing, 439 F.3d at 789 (quoting Bremen, 407 U.S. at 17). Agtegra cites Farmland Indus. v. Frazier-Parrott Commods., Inc, 806 F.2d 848 (8th Cir. 1986), abrogated on other grounds by Lauro Lines s.r.l. v. Chasser, 490 U.S. 495 (1989), for the authority that "courts have the right to refuse to enforce a forum-selection clause in cases where the forum-selection clause covers only some, but not all of the claims in the action, thereby creating piecemeal litigation." Doc. 26 at 11. This Court believes Farmland is distinguishable. In Farmland, although the Eighth Circuit noted there were additional parties that were "not subject to the agreement," it held "that Farmland's causes of action do not all arise directly or indirectly from the agreement and that Farmland could not have anticipated having to

16

litigate the[] claims in [the pre-selected forum]." 806 F.2d at 852. Here, unlike in Farmland, all of Agtegra's claims stem from the delivery of contaminated propane. See Doc. 1-1 at 9–11. Moreover, based on Sacramento and Agtegra's forum-selection clause, Agtegra knew that if a dispute arose from the delivery, it would have to litigate those claims in Texas. Because this Court finds Farmland distinguishable, it does not dictate the outcome here.

Agtegra also claims that enforcing the forum-selection clause will create piecemeal and duplicative litigation by requiring it to litigate against Pico in South Dakota and Sacramento in Texas. Doc. 26 at 11–12. "Piecemeal litigation is inconvenient, more expensive for the litigants, and a waste of judicial resources." Star Ins. v. Cont'l Servs., Inc., 916 F. Supp. 2d 936, 943 (D.N.D. 2013). Thus, Agtegra's claim is in part a private-interest or inconvenience argument, which is irrelevant when there is a valid forum-selection clause. See In re Union Elec. Co., 787 F.3d at 909 ("[W]hen applying § 1404(a) in the presence of a forum-selection clause, questions of convenience to the parties and private interests fall away as having been conclusively determined by the contractual selection of forum." (citing Atl. Marine, 571 U.S. at 62–65)).

Even if Agtegra's argument is a factor this Court should consider, it would still reject Agtegra's claim as it would be the party that created the piecemeal litigation by not bringing its entire case in Texas—the forum it pre-selected in its contract with Sacramento. Pico has also sued parties that are allegedly responsible for the contamination of Pico's transport tanker in Texas and thus piecemeal litigation already exists. Doc. 24-1; Doc. 27 ¶¶ 5–11. Thus, Agtegra cannot avoid its contractual obligation by simply joining non-parties to the contract in one action, especially when there is preexisting litigation on this matter in the forum pre-selected by Agtegra and Sacramento. See In re Int'l Profit Assocs., Inc., 274 S.W.3d at 680 ("If all it takes

to avoid a forum-selection clause is to join as defendants . . . residents who are not parties to the agreement, then forum-selection clauses will be of little value.").

Ultimately, Agtegra does not explain why this is an exceptional case warranting exemption from the forum-selection clause.  See Enerplus Res. (USA) Corp. v. Wilkinson, 865 F.3d 1094, 1097 n.5 (8th Cir. 2017) (noting a valid forum-selection clause controls "in all but the most exceptional cases." (quoting Alt. Marine, 571 U.S. at 60)).  When Agtegra and Sacramento signed the contract governing propane deliveries, the parties had a legitimate expectation that all issues with propane deliveries would be dealt with in Texas.  See Doc. 12-1.  The Court will not disturb this expectation.  As a result, Agtegra has failed to meet its heavy burden to show the forum-selection clause is unjust, unreasonable, or invalid based on "fraud or overreaching" or that enforcement of the clause would deprive Agtegra of its day in court.  Energy Ins. Mut. Ltd., 689 F.3d at 973–74.  Thus, the Court finds the forum-selection clause is enforceable and that transfer under § 1404(a)[6] to the Northern District of Texas, Fort Worth Division, is proper.

### b. Pico

Because Pico was not a party to the forum-selection clause with Agtegra, this Court must employ, "a traditional, flexible, multi-factored analysis" to determine whether the District of South Dakota is an inconvenient forum.  In re Union Elec. Co., 787 F.3d at 906.  While employing this analysis, "courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted."  In re Apple, Inc., 602 F.3d at 912 (citing Stewart Org., 487 U.S. 22, 29 (1988) (additional citation omitted)).

---

[6] "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."  Atl. Marine, 571 U.S. at 60.

Pico states it is suing "Apex Services Group, LLC, and Pinnacle Truck Trailer & Rail, LLC d/b/a Apex Services Group (collectively, "Apex") in Texas State Court." Doc. 27 ¶ 8. It maintains that "Apex is the one who serviced the tanker truck in question in this South Dakota lawsuit, and that if Pico Propane is liable to Agtegra for any damages related to the incident then Apex is liable to Pico . . . for those same damages as it would have been the actions of Apex in Texas . . . that would have led to the incident alleged by Agtegra against Pico." Id. ¶ 9. To Pico's knowledge, "South Dakota courts do not have jurisdiction over Apex." Id. ¶ 10. Ultimately, Pico claims that transferring the case to Texas would eliminate piecemeal litigation because then "Apex [could] be added as a third-party defendant." Id. ¶ 11.

### i.    Convenience of the Parties

As ruled above, Agtegra's claims against Sacramento are transferred to the Northern District of Texas. Pico, a Texas company, is already litigating claims against Apex, who is allegedly culpable for the water contamination, in Texas. Doc. 24-1 ¶¶ 5-15; Doc. 27 ¶¶ 8–11. Accordingly, it would be convenient for both parties to litigate the entire case in Texas. Thus, the convenience of the parties favors transferring Agtegra's claims against Pico to Texas.

### ii.    Convenience of the Witnesses

While the parties have not expressly addressed potential witnesses, the convenience of any such witnesses would also favor transfer. Some witnesses will have to travel far no matter where the case is heard. Moreover, this case does not seem to be about whether Agtegra was injured. Instead, this case seems to be a question of damages and the entity or entities responsible for said damages. Although the injury occurred in South Dakota, it seems the number of witnesses needed from South Dakota (Agtegra) is minimal compared to ones needed from Texas (Sacramento, Pico, and Apex), which are necessary to determine who is liable for the

contamination, which allegedly occurred in Texas.  Accordingly, it seems likely that most of the witnesses would be from the Texas region.  Because Agtegra must litigate its case against Sacramento in Texas, it would be inconvenient to make witnesses travel to Texas and South Dakota for two cases based on the same facts.  Thus, the convenience of the witnesses favors transferring Agtegra's claims against Pico.

### iii.    Interest of Justice

"[J]udicial efficiency and consistency are significant factors to consider in deciding whether a defendant has met its burden of showing convenience and fairness support a transfer of venue under § 1404(a)."  Midwest Athletics & Sports All. LLC v. Xerox Corp., No. 17CV478, 2018 WL 6427872, at *5 (D. Neb. Dec. 6, 2018) (citing In re Volkswagen of Am., Inc., 566 F.3d 1349, 1351 (Fed. Cir. 2009)).  Here, "there is no question that judicial resources would be best utilized by litigation in a single [forum] where all parties may be joined."  Bhd. of Maint. of Way Emp. Div./IBT v. Union Pac. R.R., 485 F. Supp. 3d 1048, 1062–63 (D. Neb. 2020); see also GMAC/Residential Funding Corp. v. Platinum Co. of Real Est. & Fin. Servs., No. CIV.02-1224, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) ("The avoidance of duplicative or piecemeal litigation is a factor that weighs in favor of transferring an action to a district in which all parties can be joined in a single action." (citing Houk v. Kimberly-Clark Corp., 613 F. Supp. 923, 932 (W.D. Mo. 1985))).  Although Agtegra's choice of forum must enjoy deference, the interest of justice favors transfer.

After considering the convenience of the parties, the convenience of the witnesses, and the interests of justice, this Court finds that Pico has fulfilled its burden of showing transfer is warranted despite Agtegra's choice to file in South Dakota.  Because the factors favor

transferring Agtegra's claims against Pico, this Court will transfer the entire case (including Agtegra's claims against Pico) to the Northern District of Texas, Fort Worth Division.

## III.   Sanctions

Sacramento seeks sanctions against Agtegra, asserting Agtegra's arguments opposing transfer "were not warranted by existing law or a good faith, nonfrivolous argument for some modification or extension of existing law." Doc. 28 at 2 n.2 (quoting Healy v. Supreme Court of South Dakota, 23-CV-04118, 2023 WL 8653851, at *12 (D.S.D. Dec. 14, 2023)). Sacramento further contends Agtegra's action has unnecessarily multiplied these proceedings and that this Court should impose sanctions that it "determines appropriate under 28 U.S.C. [§] 19[27]." Id. This Court finds that an award of sanctions against Agtegra is unwarranted and denies Sacramento's request.

## IV.   Order

For the above reasons, and the record as it now exists before this Court, it is

ORDERED that Plaintiff's Motion to Strike, Doc. 30, is denied. It is further

ORDERED that Defendant Sacramento's Motion to Dismiss or, in the Alternative, to Transfer, Doc. 22, is granted in part and denied in part. Defendant's motion is granted to the extent that Sacramento sought transfer of the entire case. Defendant's motion is denied in all other regards. It is further

ORDERED that this case (including Agtegra's claims against Sacramento and Pico) be transferred in its entirety to the Northern District of Texas, Fort Worth Division.

DATED this 9th day of October, 2024.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE